(Decided 24th March, 1891.)

John C. Wilson, George Wilson, and Elizabeth Sefus *vs.* Mary Helen Mitchell, Executrix, of Mary A. Henson.

*Caveat to a Will—Admissibility of Evidence—Reversal without Awarding new trial.*

While it is fully competent for the caveatees to a will to prove specific facts tending to show the reasons by which the testatrix was governed in making the several testamentary dispositions of her property, and thereby to rebut any presumption that might arise from these changes in the disposition of her property as affecting her mental condition, yet this cannot be done by proving that it was a common thing for persons to change their wills.

But where, on appeal by the caveators from the action of the Court below in admitting such evidence, it appears that such evidence

when considered in connection with the evidence brought out on cross-examination of the witness, could not in any manner have prejudiced the appellants, the ruling of the Court below will be reversed without awarding a new trial.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*W. Cabell Bruce,* for the appellants.

*Milton W. Audoun,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The question in this case is a very narrow one, and arises upon an exception to certain evidence admitted during the progress of the trial in the Court below. The testatrix died in the early part of 1890, leaving a paper purporting to be her will, by which she devised her property to Mary H. Mitchell for life, and upon her death to the African Methodist Bethel Church of Baltimore City. To the probate of this paper *a caveat* was filed by the heirs and next-of-kin, and, upon their petition, issues were sent by the Orphans' Court to the Baltimore City Court for trial, involving "*testamentary capacity,*" "*fraud,*" and "*undue influence.*" After offering evidence tending to prove that the testatrix was incompetent to execute a valid deed or contract, the caveators further proved that within eighteen months prior to her death, she had made no less than four different testamentary dispositions of her property, one of which was made a few weeks only before the date of the will now in controversy.

Now, to rebut any inference the jury might draw from this evidence, as tending to show a weak and vacillating mind on the part of the testatrix, and as such easily susceptible to the influence of those around her, the caveatee proved by the witness Audoun, by whom the will in question was prepared, that he was a lawyer of considerable practice in testamentary affairs, and especially in the preparation of wills, and then asked him the following question:

"What has been your observation with reference to the habit of people as regards changing their wills?"

To which he replied: "That from his observation it was a common thing for people to change their wills."

Now we fully agree with the appellants that such evidence as this was wholly inadmissible. It is no doubt a common thing for persons to change their wills, and for reasons which may be satisfactorily explained. And while it was fully competent for the caveatee to prove any specific facts tending to show the reasons by which the testatrix was governed in making the several testamentary dispositions of her property offered in evidence, and thereby to rebut any presumption that might arise from these changes in the disposition of her property as affecting her mental condition; yet this could not be done by proving that it was a common thing for persons to change their wills. At the same time it does not seem to us that such evidence, when considered in connection with the evidence brought out on cross-examination of the witness, could in any manner have prejudiced the appellants. After his examination-in-chief, the witness was asked by the caveators the following question: "You have testified that people frequently change their wills; do they not, as a general thing, assign some reason for such changes?" To which he answered: "They generally do."

He was then asked: "Are not such changes usually made because of an increase or decrease in testator's

American Towing Co. *vs.* German Fire Ins. Co.

estate, the death of beneficiaries, or some difference 'in the conduct of those who would have been the objects of bounty toward the testator?'' To which he replied: ''They are.'' So his testimony amounts simply to this, that it is a common thing for persons to change their wills, but such changes are generally made for satisfactory reasons, and which are susceptible of explanation.

Now, whether the several changes made by the testatrix in the disposition of her property were made for reasons which could be satisfactorily explained, or were the result of fraud or undue influence operating upon a weak and feeble mind, were all matters open for argument before the jury; and were, no doubt, fully discussed by counsel and considered by the jury. The case was fully tried, occupying an entire week; and we do not feel justified in sending it back for a new trial because of the error in regard to evidence altogether irrelevant, and which could not have operated to the prejudice of the appellants. So, although we do not agree with the ruling of the Court as to the evidence offered by the caveatee, we see no good reason for disturbing the verdict.

*Ruling reversed, without*
*awarding a new trial.*

(Decided 24th March, 1891.)